**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ALBERTO CONCEPCION, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 10-0599 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 12 |
| | : | | |
| U.S. CUSTOMS AND BORDER PROTECTION, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING WITHOUT PREJUDICE THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

The plaintiff brought this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the defendant, the U.S. Customs and Border Protection ("CBP") to disclose records pertaining to the "passenger activity" of the plaintiff's deceased brother from January 1, 1997 until the present. CBP now moves for summary judgment, contending that it has conducted an adequate search and has already provided all of the responsive documents to the plaintiff. Because CBP has failed to demonstrate that it has searched all the databases where one could reasonably expect to find records responsive to the plaintiff's FOIA request, the motion is denied without prejudice.

### II. FACTUAL & PROCEDURAL BACKGROUND

Beginning on May 1, 1998, the Federal Bureau of Investigation ("FBI"), along with state and local law enforcement officials in New Jersey, conducted an investigation targeting the plaintiff and others involved with the distribution of large quantities of heroin. Compl. ¶¶ 10-13.

The investigation led to the plaintiff's arrest on December 15, 1999, *id.* ¶ 12, and subsequent criminal proceedings in the United States District Court for the District of New Jersey, *id.* ¶ 13. Eventually, the plaintiff was convicted and sentenced to 325 months of imprisonment. *See United States v. Concepcion*, Civ. No. 99-753 (D.N.J. July 7, 2000) (Judgment), *aff'd*, 259 F.3d 717 (3d Cir. 2001).

The plaintiff claims that during the period of the criminal investigation that led to his arrest, he had been using the driver's license, credit cards and social security number of his deceased brother, Miguel Concepcion. Compl. ¶¶ 9, 27. Using his deceased brother's identity, the plaintiff allegedly bought and used an airplane ticket from New Jersey to North Carolina, and claims to have been in North Carolina on the dates that he purportedly sold heroin to a government informant. *Id.* ¶ 27.

In an attempt to bolster his alibi with evidence, the plaintiff submitted a FOIA request to CBP in June 2008, *id.* ¶ 14, seeking the following information:

> A COPY OF ANY, [AND] ALL OF THE RECORDS, DOCUMENTS, FILES, DATA, & ETC., OF THE PRIMARY QUERY HISTORY OF PASSENGER ACTIVITY, FROM JAN. 1, 1997, UNTIL PRESENT FOR MY DECEASE[D] BROTHER MIGUEL CONCEPCION, DOB: SEPT. 2, 1961; POB: NEWARK, NEW JERSEY; SSN: . . . ; [AND] DATE OF DEATH WAS <u>JULY 25, 1997</u>.

*Id.*, Ex. N-7 (Pl.'s FOIA Request) (emphasis in original).

According to Shari Suzuki,[1] a CBP official, CBP responded to the plaintiff's request by conducting a search of one of its databases, the Treasury Enforcement Communications System ("TECS"), using Miguel Concepcion's name and date of birth as search terms. Def.'s Mot., Ex. A ("Suzuki Decl.") ¶ 19. Suzuki explains that TECS is an "information collection, risk

---
[1] Suzuki is the Chief of FOIA appeals in the Policy and Litigation Branch, Regulations and Rulings, Office of International Trade, U.S. Customs and Border Protection. Def.'s Mot., Ex. A ("Suzuki Decl.") ¶ 1.

2

assessment, and information sharing environment" that contains "temporary and permanent enforcement, inspection and intelligence records." *Id.* ¶ 25. Among TECS's records are international flight records. *Id*. ¶¶ 26-27. CBP does not keep, however, and therefore TECS does not contain, records on exclusively domestic travel. *Id*. ¶¶ 26-27.

A search of CBP records yielded a one-page passenger activity record that was responsive to the plaintiff's request. Suzuki Decl. ¶¶ 12, 25; Def.'s Mot., Ex. D. CBP redacted portions of the document under certain FOIA exemptions that the plaintiff does not challenge, Pl.'s Opp'n ¶ 8, and released the remainder of the document to the plaintiff,[2] *see* Compl., Ex. N-12.

Dissatisfied with the lack of responsive records produced by the CBP, the plaintiff appealed to CBP's FOIA Appeals, Policy and Litigation Branch, which denied the appeal. *See id.*, Ex. N-15; *id.*, Ex. N-19. The plaintiff then commenced this action, demanding the "'full disclosure' of the non-exempt, [and] wrongfully withheld travelers information for [Miguel Concepcion] . . . with the dates of flights, time of flights, location of flights, price of purchased flight tickets, [and] locations of purchased airline tickets . . . [and] all other unmentioned records . . . of [Miguel Concepcion's] travel information." *Id.* ¶ 37. The defendant subsequently filed a motion for summary judgment. With that motion now ripe for adjudication, the court turns to the parties' arguments and the applicable legal standards.

---

[2]   CBP is required to demonstrate that it produced all reasonably segregable material found in its responsive document. *See Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Through Suzuki's declaration, CBP explained the FOIA exemptions applied to the information it has redacted, Suzuki Decl. ¶¶ 20-25, and asserts that it produced all reasonably segregable information, *id.* ¶ 28. In light of the detailed justification correlating its claims of exemptions to the withheld portions of the document, the court concludes that CBP produced all reasonably segregable responsive material for this one document. *See King v. U. S. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987).

### III. ANALYSIS

#### A. Legal Standard for Summary Judgment in FOIA Cases

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). In deciding whether there is a genuine dispute, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure. 5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information. 5 U.S.C. § 552(a)(4)(B). In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA and that the agency has adequately segregated exempt from non-exempt materials. 5 U.S.C. § 552(a)(4)(B); *Al-Fayed v. Cent. Intelligence Agency*, 254 F.3d 300, 305 (D.C. Cir. 2001);

*Summers v. U.S. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998); *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). An agency may meet its burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the reason for the withholding. *Summers*, 140 F.3d at 1080; *King v. U.S. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987).

FOIA mandates that "any reasonable segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). By 1977, it had "long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc.*, 566 F.2d at 260. The D.C. Circuit has made clear that "the 'segregability' requirement applies to all documents and all exemptions in the FOIA." *Center for Auto Safety v. Envtl. Prot. Agency*, 731 F.2d 16, 21 (D.C. Cir. 1984). In fact, the segregability requirement is so essential to a FOIA inquiry that "it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Schiller*, 964 F.2d at 1210 (D.C. Cir. 1992) (quoting *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

To demonstrate that the withholding agency has disclosed all reasonably segregable material, "the withholding agency must supply a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987) (internal quotations omitted). The agency, however, is not required to provide so much detail that the exempt material effectively would be disclosed. *Mead Data*, 566 F.2d at 261. Furthermore, conclusory language in agency declarations that do

not provide a specific basis for segregability findings by a district court may be found inadequate. *Animal Legal Def. Fund, Inc. v. U.S. Dep't of Air Force,* 44 F. Supp. 2d 295, 301 (D.D.C. 1999). The Circuit, though expressly disclaiming any attempt to provide "an encompassing definition of 'conclusory assertions,'" noted that "it is enough that where no factual support is provided for an essential element of the claimed privilege or shield, the label 'conclusory' is surely apt." *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987).

### B. Legal Standard for FOIA Adequacy of Agency Search

"A requester dissatisfied with the agency's response that no records have been found may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). To prevail on summary judgment, "the agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (internal quotations and citations omitted). An agency must search for documents in good faith, using methods that are reasonably expected to produce the requested information. *Valencia-Lucena*, 180 F.3d at 326 (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The principal issue is not whether the agency's search uncovered responsive documents, but whether the search was reasonable. *Oglesby*, 920 F.2d at 67 n.13 (citing *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986)); *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996). The agency need not search every record in the system or conduct a perfect search. *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *Meeropol*, 790 F.2d at 952, 956. Nor need the agency produce a document if "the agency is no longer in possession

6

of the document[] for a reason that is not itself suspect." *SafeCard Servs.*, 926 F.2d at 1201.

Instead, to demonstrate reasonableness, the agency must set forth sufficient information in affidavits for the court to determine, based on the facts of the case, that the search was reasonable. *Nation Magazine*, 71 F.3d at 890 (citing *Oglesby*, 920 F.2d at 68). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs.*, 926 F.2d at 1200. But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.* If the record raises substantial doubts regarding the agency's efforts, "particularly in view of well defined requests and positive indications of overlooked materials," summary judgment is not appropriate. *Valencia-Lucena*, 180 F.3d at 326 (internal quotations and citations omitted).

### C. The Court Denies Without Prejudice the Defendant's Motion for Summary Judgment

CBP asserts that it conducted a reasonable search for documents responsive to the plaintiff's request and produced the only responsive record. Def.'s Mot. at 5-6. The plaintiff suggests that CBP either possesses additional responsive records or that "somebody 'knowingly, [and] illegally' erased information from the TECS database." Pl.'s Opp'n ¶ 7.

To demonstrate the adequacy of its search, CBP must show that it searched all files likely to contain records responsive to the plaintiff's request for "any, [and] all of the records . . . of the primary query history of passenger activity" between January 1, 1997 to the present. Compl., Ex. N-7; *Nation Magazine*, 71 F.3d at 890. CBP explained that it searched the TECS system for any responsive documents, *see* Suzuki Decl. ¶¶ 12, 19, 25, 28, and that it does not maintain records on domestic travel, *see id.* ¶¶ 26-27. The plaintiff's FOIA request, however, is not limited to domestic flight records. *See* Pl.'s FOIA Request. Suzuki's affidavit, the only

7

evidence offered by CBP, does not demonstrate that CBP searched all of the record systems that were likely to contain materials responsive to the plaintiff's FOIA request, *Oglesby*, 920 F.2d at 137 (observing that "a reasonably detailed affidavit . . . averring that all files likely to contain responsive materials . . . were searched, is necessary . . . to allow the district court to determine if the search was adequate in order to grant summary judgment").

Because CBP may not "limit its search to only one record system if there are others that are likely to turn up the information requested," *James v. U.S. Customs & Border Protection*, 474 F. Supp. 2d 154, 159 (D.D.C. 2007), and because CBP has not demonstrate that responsive documents would not reasonably be found in other record systems or that it searched any other potential sources but found no responsive records, the court determines that CBP has not demonstrated that its search was adequate. Accordingly, the court denies the defendant's motion for summary judgment without prejudice. *Id.* (denying summary judgment without prejudice because CBP "[made] no further attempt at all to explain why TECS is the exclusive source of potentially responsive material"); *cf. Moayedi v. U.S. Customs & Border Protection*, 510 F. Supp. 2d 73, 80 (D.D.C. 2007) (granting summary judgment where CBP's supporting affidavit expressly stated that "TECS is the *only* CBP database that would reasonably contain the information requested in this FOIA request").

## IV.  CONCLUSION

For the foregoing reasons, the court denies without prejudice the defendants' motion to dismiss.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 3rd day of March, 2011.

RICARDO M. URBINA
United States District Judge