UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALBERTO CONCEPCIÓN, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 10-0599 (ABJ) |
| U.S. CUSTOMS AND BORDER PROTECTION, | : |
| Defendant. | : |

**MEMORANDUM OPINION**

This matter is before the Court on the renewed motion for summary judgment filed on behalf of U.S. Customs and Border Protection ("CBP"). For the reasons discussed below, the motion will be granted.

I. BACKGROUND

*A. Documents related to Miguel Concepción (FOIA Case Number 2009F1670)*

According to the complaint, at one time, plaintiff, Alberto Concepción, was using the driver's license, credit cards, and Social Security number of his deceased brother, Miguel Concepción. *See* Compl. ¶¶ 9, 27. He purchased airline tickets in his late brother's name, *see id.* ¶ 27, and travelled out of the state of New Jersey during the same time period that law enforcement authorities accused him of being involved in the sale of heroin. *Id.*[1] In order to

---

[1] "Using his deceased brother's identity, the plaintiff allegedly bought and used an airplane ticket from New Jersey to North Carolina, and claims to have been in North Carolina on the dates that he purportedly sold heroin to a government informant." *Concepción v. U.S. Customs & Border Prot.,* 767 F. Supp. 2d 141, 142 (D.D.C. 2011). Federal, state and local law enforcement agencies "conducted an investigation targeting the plaintiff and others involved with the distribution of large quantities of heroin," *id.*, in Newark, New Jersey, *see Concepción v. Fed. Bureau of Investigation*, 606 F. Supp. 2d 14, 37 (D.D.C. 2009). "In 2000, Concepción

1

obtain information regarding his departures from and arrivals into the United States in connection with his defense to those charges, plaintiff submitted a request under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, to CBP for the following information:

> A COPY OF ANY, & ALL OF THE RECORDS, DOCUMENTS, FILES, DATA, ETC., OF THE PRIMARY QUERY HISTORY OF PASSENGER ACTIVITY, FROM JAN. 1, 1991, UNTIL PRESENT FOR MY DECEASE[D] BROTHER MIGUEL CONCEPCIÓN.

Def.'s Mem. in Supp. of the Renewed Mot. for Summ. J. [Dkt. #37] ("Def.'s Mem."), Decl. of Shari Suzuki ("Suzuki Decl."), Attach. A (Freedom of Information Act Request dated July 8, 2008) (emphasis in original). CBP staff interpreted the request as one "for a 'Passenger Activity' record, which is a commonly requested record [of] an individual's international travel history, showing the date, time, and location of each border crossing recorded by CBP." Suzuki Decl. ¶ 8. The search of a database known as "TECS using the name 'Miguel Concepción' and [his] date of birth" as search terms yielded "a one page 'Passenger Activity' record," *id.* ¶ 10, "on the international arrival of Miguel Concepción on June 11, 1997," *id.* ¶ 11. The agency released the record after having redacted information under Exemptions 6, 7(C), and 7(E). *See id.* ¶¶ 11, 23, 44; *see also id.*, Attach. C (Letter from Mark Hanson, Director, FOIA Division, Office of International Trade, CBP, to plaintiff dated January 30, 2009). Plaintiff pursued administrative appeals of this determination to CBP's FOIA Appeals, Policy and Litigation Branch, *id*. ¶¶ 12-13, without success, *see id.* ¶19.

*B. Documents related to Alberto Concepción*

Plaintiff also submitted a separate request "<u>all</u> records wherein [his] name is utilized, and this request is all inclusive." Compl., Ex. N-8 (Freedom of Information/Privacy Act Request

---

pleaded guilty to one count of conspiring to distribute heroin, and the [United States] District Court [for the District of New Jersey] sentenced him to 325 months of imprisonment." *Concepción v. Zickefoose*, 442 F. App'x 622, 622 (3d Cir. 2001) (per curiam).

dated July 8, 2008) (emphasis in original).  CBP did not process the request upon receipt, however, because it "had previously processed an almost identical request from [p]laintiff in March, 2008," Suzuki Decl. ¶ 25, as well as a referral to CBP from the Federal Bureau of Investigation" which also sought information about plaintiff himself, *id.* ¶ 26, resulting in the release on April 8, 2008, of "three pages of records . . . on the international arrivals of [p]laintiff on February 22, 1997[,] May 31, 1999 and June 7, 1999," in redacted form, *id.* ¶ 28.[2]  Plaintiff did not appeal this determination, so it is the request for documents related to travel in the name of his brother that is before the Court.[3]  *Id.* ¶ 30.

Plaintiff asserts that there were trips for which no records were produced, so his first contention is that the search was inadequate and/or the records have been deliberately destroyed. While the agency did produce one Passenger Activity Record for Miguel Conception, it redacted certain information from the document before providing it to the plaintiff. So plaintiff's second challenge goes to the grounds for redactions.

## II.  DISCUSSION

### A.  *Summary Judgment in a FOIA Case*

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must support the assertion that no facts are in dispute by "citing to

---

[2]    CBP staff conducted a new TECS search on January 17, 2012, using plaintiff's name and date of birth as search terms; this search yielded no additional records.  Suzuki Decl. ¶ 33.  On April 12, 2012, CBP released "[t]he same three records" it had released in April 2008, *id.*, after having redacted information under Exemptions 6, 7(C), and 7(E), *see id.*, Attach. M (Letter from Shari Suzuki, Chief, FOIA Appeals, Policy & Litigation Branch, CBP, to plaintiff dated April 12, 2012).

[3]    Because plaintiff did not pursue an administrative appeal of CBP's response to the request for information about himself, any claim arising from this determination must be dismissed for failure to exhaust administrative remedies prior to filing this action.  *See Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258-60 (D.C. Cir. 2003).

particular parts of materials in the record, including . . . affidavits." Fed. R. Civ. P. 56(c)(1)(A). The non-moving party has the burden "to produce admissible evidence establishing a genuine issue of material fact." *Bush v. District of Columbia*, 595 F.3d 384, 386 (D.C. Cir. 2010) (citing *Celotex v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to "make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. The Supreme Court defines material facts as "those that might affect the outcome of the suit under governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In a FOIA case, the Court may grant summary judgment based on the information provided in affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

B. The CBP's Searches for Responsive Records

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and

internal quotation marks omitted).  A search need not be exhaustive.  *See Miller v. U.S. Dep't of State,* 779 F.2d 1378, 1383 (8th Cir. 1995).  "The issue in a FOIA case is not whether the [agency's] searches uncovered responsive documents, but rather whether the searches were reasonable."  *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted).

To meet its burden, an agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  These affidavits or declarations must describe "what records were searched, by whom, and through what processes."  *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate compliance with the FOIA.  *Perry*, 684 F.2d at 127.  If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

CBP's declarant explains that records responsive to plaintiff's request for information about Miguel Concepción, "'Passenger Activity' records[,] are retrieved from the TECS database."  Suzuki Decl. ¶ 9.  "TECS is an overarching law enforcement information collection, analysis, and sharing environment that securely links telecommunications devices and personal computers to a central system and database."  *Id.*  It "is comprised of several modules designed to collect, maintain, and screen data as well as conduct analysis, screening, and information sharing."  *Id.*  Its "databases contain temporary and permanent enforcement, inspection and intelligence records relevant to the anti-terrorism and law enforcement mission of CBP and numerous other federal agencies that it supports."  *Id.*

CBP is "responsible for collecting and reviewing border crossing information related to international travel."[4]  *Id.* ¶ 10.  A person arriving in the United States is "subject to CBP inspectional processing," which requires that he "establish his . . . identity, nationality, and admissibility to the satisfaction of a CBP officer."  *Id.*  TECS maintains information that the person "has been admitted into the United States at a particular time and port of entry."  *Id.*  TECS, the declarant explains, "is the only CBP system that maintains border crossing information (i.e., travel history or 'Passenger Activity' record)."  *Id.* ¶ 10; *see id.* ¶ 17.  Using Miguel Concepción's name and date of birth as search terms, a TECS query yielded the one-page Passenger Activity record.  *Id.* ¶ 10; *see id.*, Attach. J (redacted Passenger Activity record).

Plaintiff contends that he "has traveled to the [B]ahama[]s (TWICE), [J]amaica (ONCE), [C]ancun[, M]exico (ONCE), & [S]aint [m]artin's [sic] (TWICE), among . . . other 'international destinations[,]'" under his brother's name between 1995 and 1999, yet "no such international airline travel flight information exist[s] on the records that were provide by CBP."  Plaintiff's Third Opposition Motion/Declaration/Memorandum of Law/Brief of Facts[] & Law in Support of his Genuine Issues, Inter Alia, in Response to Counsel of Record Third Frivolous, Inter Alia, Motion for Summary Judgment [Dkt. #40] ("Pl.'s Opp'n") ¶ 12.  He contends that, because only government employees have access to databases with travel information, *see id.*, a government employee must have deleted the relevant travel information from the database, *see id.* ¶¶ 4, 7, 9,

---

[4]  Neither TECS nor CBP maintains records on exclusively domestic travel.  Suzuki Decl. ¶¶ 47-48.  CBP's search is not inadequate because it failed to yield records of Concepción's domestic air travel, notwithstanding plaintiff's assertion that it has "access, & control of retrieving 'any, & all' airline travel records from 'any, & all' of there [sic] sub-agencies, regarding . . . domestic . . . flights."  Plaintiff's Third Opposition Motion/Declaration/Memorandum of Law/Brief of Facts[] & Law in Support of his Genuine Issues, Inter Alia, in Response to Counsel of Record Third Frivolous, Inter Alia, Motion for Summary Judgment ¶ 10 (emphasis removed).

20.      Plaintiff provides a photograph of himself ostensibly taken while on vacation in The Bahamas, *id.* ¶ 12, and in Cancun, *see id.*, Ex. M-2, and credit card statements, *see* Compl., Exs. N-34 to N-37, to support his claim that he was not in New Jersey when the alleged criminal activity occurred.

Where, as here, plaintiff opines that potentially responsive records existed and have been destroyed – without any support for his allegations of agency wrongdoing – he cannot overcome CBP's showing. "[S]peculation as to the existence of additional records . . . does not render the searches inadequate." *Concepción v. Fed. Bureau of Investigation,* 606 F. Supp. 2d 14, 30 (D.D.C. 2009); *see Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (finding the requester's "assertion that an adequate search would have yielded more documents is mere speculation" and affirming district court's decision that agency's search procedure was "reasonably calculated to generate responsive documents"); *SafeCard Servs.*, 926 F.2d at 1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."). Even if plaintiff has conclusively established that he did travel out of the country under his brother's name, that showing would not be sufficient in and of itself to demonstrate wrongdoing on the part of the agency.

Although CBP's first search was inadequate, *Concepción v. U.S. Customs & Border Prot.*, 767 F. Supp. 2d 141, 146 (D.D.C. 2011), it has now demonstrated that its staff searched TECS, the system of records most likely to contain information responsive to plaintiff's FOIA request for his late brother's travel history. The Court concludes that the search was "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476,

1485 (D.C. Cir. 1984) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983)).

*C. Exemption 7*

Generally, "FOIA . . . mandates that an agency disclose records upon request, unless they fall within one of nine exemptions." *Milner v. Dep't of Navy*, 131 S.Ct. 1259, 1262 (2011). CBP withholds information under Exemptions 7(C) and 7(E), which apply to records compiled for law enforcement purposes.[5]

1.  Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), but only to the extent that disclosure of such records would cause an enumerated harm. *See Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). "To show that the disputed documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

The Directorate of Border and Transportation Security within the Department of Homeland Security performs numerous law enforcement functions, including preventing the entry of terrorists and the instruments of terrorism into the United States, securing the borders,

---

[5]   CBP withholds two types of information under both Exemption 6 and Exemption 7(C): the social security numbers of the CBP officers who processed plaintiff and Miguel Concepción upon their arrivals into the United States and the unique terminal identification number assigned to a particular CBP employee. *See* Suzuki Decl. ¶¶ 39-40, 42. As is discussed below, this information properly is withheld under Exemption 7(C), and the Court need not address the applicability of Exemption 6. *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1992); *Marshall v. Fed. Bureau of Investigation*, 802 F. Supp. 2d 125, 134 (D.D.C. 2011).

and carrying out immigration enforcement functions. *See* 6 U.S.C. §202. CBP's declarant states that the agency is responsible for collecting and reviewing information related to international travel, and this responsibility includes the "inspectional processing" of individuals arriving in the United States. Suzuki Decl. ¶ 10. "Information . . . that the individual has been admitted into the United States at a particular time and port of entry" is maintained in TECS. *Id.* A Passenger Activity record "details an individual's international arrivals and departures to and from the United States and includes information on CBP's screening and examination process." *Id.* ¶ 42. The record at issue in this case, the declarant states, "was compiled for law enforcement purposes in that the arrival and departure information is collected and used by CBP in its mission to secure the borders of the United States." *Id.* While the agency's declaration could have provided more specificity on this point, the Court finds that the Passenger Activity report regarding Miguel Concepción, is a law enforcement record within the scope of Exemption 7.

2. Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the privacy interests of individuals mentioned in the records against the public interest in disclosure. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), we must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.") (internal quotation marks and citation omitted); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007). The D.C. Circuit has held "categorically that, unless access to the names and

addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs.*, 926 F.2d at 1206.

Here, while CPB produced the Passenger Activity Record, it withholds "the social security numbers of the CBO Officers that processed Miguel Concepción and Plaintiff during their arrivals into the United States," Suzuki Decl. ¶ 39; *see id.* ¶ 42, and the unique identification number "assigned to the terminal of the CBP employee who retrieved the records in response to" plaintiff's FOIA request, *id.* ¶ 40; *see id.* ¶ 42. Both the social security numbers and the terminal identification number "appear in the 'Passenger Activity' record" at issue. *Id.* ¶ 42.

The CBP officers, the declarant explains, have "a protectible [sic] privacy interest" in their social security numbers that would be "threatened by disclosure." *Id.*; *see id.* ¶ 39. Similarly, the CBP employee to whom the unique terminal identification number is assigned "has a protectible [sic] interest in his identity that could be revealed by release of the terminal identification number." *Id.* ¶ 42; *see id.* ¶ 40. The declarant asserts that the "employee has a protectible [sic] privacy interest in his identity that would be threatened by disclosure." *Id.* In neither case does the disclosure of the information shed light on the CBP's actions, and the declarant identifies no public interest to outweigh the individuals' privacy interests. *Id.* ¶ 42; *see id.* ¶¶ 39-40.

Plaintiff appears to believe that the relevant privacy interest is that of his deceased brother, *see* Pl.'s Opp'n ¶ 7, but this is not the case. The privacy interests at stake belong to the individuals mentioned in the records responsive to the FOIA request, not to the requester or to

the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989).  Although the Passenger Activity record was retrieved by using Miguel Concepción's name and date of birth as search terms, the information withheld from the record does not pertain to him.

Next, plaintiff attempts to identify a public interest sufficient to outweigh the individuals' privacy interests.  He claims that the "misconduct in office, & illegal activities" of certain "rogue federal government employees" have caused the information he seeks to have been "erase[d] . . . from . . . airline travel databases . . . in order to attempt to cover-up acts of illegal activities . . . within the corporate United States government."  Pl.'s Opp'n ¶ 20; *see id.* ¶ 7 (referring to "the 'illegal erasing-deletions' of the airline travels of CONCEPCION, & MIGUEL, from the CBP, database(s) . . . 'constitute' fraud, misconduct in office, & illegal activities") (emphasis removed).  As noted above, such "[u]nsubstantiated assertions of government wrongdoing . . . do not establish a meaningful evidentiary showing."  *Boyd v. Criminal Div. of the Dep't of Justice,* 475 F.3d 381, 388 (D.C. Cir. 2007) (citing *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 175 (2004) (internal quotation marks omitted).  Absent production of evidence by plaintiff "that would give rise to a reasonable belief that any government impropriety might have occurred[,] . . . the Court need not engage balancing."  *Marshall v. Fed. Bureau of Investigation*, 802 F. Supp. 2d 125, 135 (D.D.C. 2011).  Moreover, the redacted information – the names of the agents who may have processed the brothers at the border – has no bearing on the alleged wrongdoing in connection with the maintenance of the records.

The CBP's decision to withhold information under Exemption 7(C) is fully consistent with the relevant caselaw.  *See, e.g., Negley v. Fed. Bureau of Investigation*, No. 03-2126, 2011 WL 3836465, at *6-7 (D.D.C. Aug. 31, 2011) (names and/or identifying information of: FBI

11

personnel, individuals who furnished information to the FBI under an implied assurance of confidentiality, state government employees or non-federal law enforcement officers, third parties merely mentioned in the records, individuals interviewed by the FBI, and third parties of investigative interest); *Marshall*, 802 F. Supp. 2d at 134-35 (names and identifying information of FBI Special Agents, FBI personnel, and third parties of investigative interest); *McGehee v. U.S. Dep't of Justice*, 800 F. Supp. 2d 220, 233-34 (D.D.C. 2011) (third parties merely mentioned, third parties who provided information, FBI Agents and support personnel, non–FBI federal government personnel, local and/or state government employees, third parties of investigative interest, and victims and survivors of the Jonestown Massacre in Guyana). Thus, the defendant properly withheld the names of and identifying information about these third parties under Exemption 7(C).

3. Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Under Exemption 7(E), CBP withholds a "computer screen transaction code, [a] computer program transaction code, computer function codes (i.e., 'PF codes' or 'navigation keys') and information that would reveal the results of specific law enforcement database queries (the 'RSLT' column)," on the ground that "[r]elease of this information would enable an individual knowledgeable in computer mainframes to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data and interfere with enforcement proceedings." Suzuki Decl. ¶

44. If the computer screen and program transaction codes were disclosed, "the master record code and page record code . . . show[ing] precisely where electronic information is stored and how [it is] retrieved from the database" also would be disclosed. *Id.* ¶ 45. In this event, individuals may gain "unauthorized access to information which could result in alteration, loss, damage or destruction of data contained in CBP's computer system." *Id.* This, in turn, "would facilitate a hacker's interruption of the database" by showing "the exact location of electronic information" and offering "insight into how the system is structured." *Id.*

Disclosure of the RSLT column means disclosure of "the names of law enforcement databases that were queried at the time of arrival and the results of those queries," as well as "CBP targeting and inspection techniques used in the processing of international travelers." *Id.* This disclosure "would enable potential violators to design strategies to circumvent the examination procedures developed by CBP." *Id.*

Because TECS "is CBP's principal law enforcement and anti-terrorism database system," the declarant asserts that its protection "is imperative in assisting CBP to meet its mission secure against terrorists, their weapons, and other dangerous items from entering the United States." *Id.* ¶ 46. In other words, the declarant states, "there is a great need to defend TECS against any threatened or real risk of threat or compromise, not only in order to ensure the continuance of CBP's mission, but in order to assist the other law enforcement agencies which TECS may support." *Id.*

Plaintiff does not "challenge[] any of the redacted computer information." Pl.'s Opp'n ¶ 14. Accordingly, the Court treats this argument as conceded. *See, e.g., Augustus v. McHugh*, __ F. Supp. 2d __, __, 2012 WL 2512930, at *4 (D.D.C. July 2, 2012) (where plaintiff's "opposition

did not challenge the Secretary's proffered justifications under FOIA for having redacted [information,]" the arguments were "deemed conceded, and summary judgment [was] entered in favor of the Secretary"); *People for the Ethical Treatment of Animals v. Nat'l Inst. of Health*, 853 F. Supp. 2d 146, 151 (D.D.C. 2012) ("Plaintiff also did not respond to defendant's arguments with respect to Count I or Count III in its opposition to defendant's motion for summary judgment," and, accordingly, "the Court . . . treat[ed] Count I and III as conceded and . . . dismiss[ed] these claims without prejudice"); *see also* LCvR7(h).

## D. Fees and Costs

Plaintiff, who is proceeding *pro se* and *in forma pauperis*, demands an award of fees and costs for such items as photocopies, typewriter ribbons, and research. *See* Pl.'s Opp'n ¶ 16. FOIA permits a district court to "assess against the United States . . . litigation costs reasonably incurred in any case . . . in which the [plaintiff] has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A party substantially prevails if he "has obtained relief through either . . . a judicial order, or an enforceable written agreement or consent decree[,] or . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The decision to award attorneys' fees and costs is left to the Court's discretion. *See Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 705-06 (D.C. Cir. 1977) (commenting that § 552(a)(4)(E) "contemplates a reasoned exercise of the courts' discretion taking into account all relevant factors"). In making this decision, the Court considers "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Davy v. Central Intelligence Agency*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (citations omitted). "No one factor is dispositive, although the [C]ourt

will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." *Id.*

It is apparent that plaintiff has not substantially prevailed in this action. He neither identifies a public benefit derived from this case nor explains the nature of his interest in Miguel Concepción's travel information. The CBP justifies its decisions to withhold information under the claimed exemptions, and no other factor warrants an award of fees and costs.

*E. Segregability*

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "'It has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.'" *Wilderness Soc. v. Dep't of the Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)). The CBP's declarant avers that she has "reviewed the document determined to be responsive [to plaintiff's FOIA request], line-by-line, to identify information exempt from disclosure or for which a discretionary waiver could apply," and has determined that "all reasonably segregable portions of the relevant record have been released to the Plaintiff in this matter." Suzuki Decl. ¶ 49.

The CBP's declaration, coupled with a copy of the redacted Passenger Activity record, are sufficient to establish that all reasonably segregable information has been disclosed to plaintiff. *See Abdelfattah v. U.S. Immigration and Customs Enforcement*, 851 F. Supp. 2d 141, 146 (D.D.C. 2012) (supplying an affidavit stating that documents were reviewed line-by-line, a

sufficiently detailed Vaughn index, and declarations to explain why each document was properly withheld meets agency obligation regarding segregability).

## III.  CONCLUSION

The Court concludes that CBP has demonstrated its compliance with the FOIA and that it is entitled to judgment as a matter of law.  Accordingly, the Court will grant its renewed motion for summary judgment.  An Order is issued separately.

/s/
AMY BERMAN JACKSON
United States District Judge

DATE:  December 4, 2012